THE WATERTOWN FIRE INSURANCE COMPANY

v.

E. W. RUST.

*Fire Insurance—Foreign Company—Right to Do Business in Illinois— Sec. 22, Chap. 73, R. S., 1887.*

1. Where an agreement, or the object of it, is such as is declared by statute to be unlawful in itself, it is void as to all the parties to it, and neither can have the aid of a court to enforce its performance or recover damages for its breach unless the right is expressly given by the statute itself.

2. Where the agreement is not unlawful in itself, but is forbidden under certain circumstances, or except upon certain conditions, and the parties alike know or are rightly presumed to know the outside facts which bring it within the prohibition, relief to either will be refused for the reason that they are *in pari delicto*.

3. There is a distinction in cases of agreements made in violation of prohibitory statutes between those which are intended to regulate the conduct of the citizens generally, and those intended to restrain one class for the protection of another; in agreements against the former the parties are *in*

*pari delicto*, and the courts will not aid either party to enforce them, and in those against the latter, though both parties may be *in delicto*, yet they may not be *in pari delicto* and courts may aid the one where they would not aid the o·her.

4. This court affirms a judgment for the plaintiff in an action brought to recover upon an insurance policy, the fact being that at the time the same was issued the company was not authorized to do business in the State, having failed to comply with Sec. 22, Chap. 73, R. S.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of Macon County; the Hon. E. P. VAIL, Judge, presiding.

Messrs. JOHNS & RANDOLPH, for appellant.

Messrs. W. G. CLOYD and LODGE & HICKS, for appellee.

PLEASANTS, J. This was an action upon a policy of insurance issued by appellant to appellee, which was tried by the court without a jury, and resulted in a judgment for $1,037.50.

Appellant was incorporated under the laws of Dakota, but in May, 1887, having complied with the requirements of our statute, was duly authorized to do business here, and in July following appointed an agent at Decatur, who received from the State auditor a proper certificate of his authority. This was renewed for the year 1888, but not for 1889. Having determined to withdraw from the State, the company did not furnish the statement and evidence of its condition which should have been furnished in January, 1889, to entitle it to a continuance of the privilege; but no other notice of such determination was given to the agent, or to appellee, or to the public. Twelve days after his authority had thus expired, the agent issued the policy here sued on and received in cash the full amount of the premium. He advised the company of that fact early in March; whereupon, by letter of the 5th of that month, it directed him to cancel the policy and return it; but nothing further was done about it by him or the company until after May 17th, when the loss occurred. Demand for its payment having been refused, this action was brought.

The statute declares "It shall not be lawful for any insurance company * * * organized under the laws of any other State * * * directly or indirectly to take risks or transact any business of insurance in this State," except upon the conditions therein prescribed; which are, that it deposit with the auditor of public accounts certain statements of its financial condition and securities for the payment of losses, and appoint an attorney here, upon whom process of law against it may be served; that every agent for it shall procure from the auditor a certificate of his authority; and that such statements and certificates shall be renewed from ye'r to year in the month of January, so long as it continues to do business in this State; and for all violations of its provisions it imposes penalties.   Sec. 22, Chap. 73, R. S., 1887.

These prohibitions, requirements and penalties are all laid upon the company and its agents, and are manifestly intended for the protection of its policy holders.

It is conceded that as between these parties, the person who issued the policy was the agent of appellant, and that all the conditions precedent to a right of recovery, as therein expressed, were fully complied with by appellee.   The only defense set up is, that its issuance under the circumstances was forbidden by the statute.   Counsel contend that every agreement so forbidden is void as to all the parties to it, and neither can have the aid of a court to enforce its performance or recover damages for its breach unless the right is expressly given by the statute itself; and many authorities are cited as in support of that proposition.

Such is doubtless the general rule where the agreement or the object of it is declared to be unlawful in itself; for there, the parties, who are alike conclusively presumed to know the law, are generally in fact alike guilty in its violation.   Lewis v. Headley, 36 Ill. 433, so strongly relied on, and other cases cited, were of that character.   In such cases the courts refuse relief to either, solely for the reason that they are *in pari delicto*.   But they are not necessarily so, even where the agreement is unlawful in itself.   Thus a debtor who has deliberately agreed to pay usury and voluntarily paid

it accordingly, may yet have the aid of a court to recover it, because the pressure of his necessities may have made his guilt or fault materially less in the eye of the law than that of his creditor. He only agreed to waive the benefit of a statute enacted for his protection, while his creditor wilfully violated a law intended for his restraint. 3 Parsons on Cont., 5th Ed., 127–8; 1 Story's Eq. Jur., Sec. 298, *et seq.* Parity of reason will suggest exceptions in other cases which ought also to be allowed.

Where the agreement is not unlawful in itself, but is forbidden under certain circumstances, or except upon certain conditions, and the parties alike know or are rightly presumed to know the outside facts which bring it within the prohibition, the same rule would generally apply, for the same reason, that they are *in pari delicto.* Penn v. Bornman, 102 Ill. 523, is an example of this kind. There the bank and the director alike knew or were properly chargeable with knowledge of the amount of pre-existing liability to it and of its capital stock held by him, which were the facts that brought the transaction, otherwise lawful, within the prohibition. Other cases cited were similar in principle.

But while both the parties must be presumed to know the law, one of them may not know nor be rightly presumed to know the facts that make it applicable in the particular case. The one upon whom the prohibition is laid is bound to know them, because his right to make such agreements is in the nature of a license upon conditions expressed. When he undertakes to exercise it he must know at his peril that the conditions are complied with. If they are not, then the agreement on his part is in violation of the law, and therefore he acquires no right by means of it which a court of law will enforce. But since it is not unlawful in itself, we see no reason why the other party should be affected by the facts which make it so in the particular case, unless he is chargeable with notice of them. Samuels v. Oliver, 130 Ill. 73, 79, *et seq.*

In most, if not all of the cases cited in which the effect of statutes like the one here considered was involved, the pro-

hibition was set up by the insured, and it was held that the
company could not maintain an action upon the premium or
assessment notes. It was so even in The Rising Sun Ins. Co.
v. Slaughter, 20 Ind. 520, which counsel think most nearly
on all fours with the case at bar. That was an action against
the company on its policy. The defense pleaded was that
plaintiff had taken out further insurance in the Quaker City
Company, without consent of the defendant and against the
stipulation of the policy sued on; to which plaintiff replied
that the Quaker City Company was a Pennsylvania Company
and had not complied with the requirements of the Indiana
statute, and the replication was held good.

This decision seems to affirm the right of the insured to avoid
such an agreement as against any party asserting its validity.
But it goes no further; and whether the company may avoid
it as against the policy holder, is quite another question. In
Cincinnati Mut. Health Ins. Co. v. Rosenthal, 55 Ill. 85, the
Supreme Court say : " Notwithstanding the company have
acted in contravention of the statute and have no right to
recover, we are not prepared to hold that the appellee has so
acted that, had he sued upon the policy before repudiating it,
he could not have recovered upon its breach. But that ques-
tion is not now before the court, and hence it is not discussed
or determined." We are not aware that it has been directly
determined by any court and must therefore decide it accord-
ing to our own best judgment, upon principle.

Perhaps the nearest approach to direct authority for the
contention of appellant is an inference claimed to be fairly
drawn from the course of decisions and legislation in New
Hampshire and Massachusetts. In those States, under stat-
utes like ours, it was held, as against the companies or their
assignees, that they could not recover upon the premium or
assessment notes for the reason that the policies, being issued
in the face of the statutory prohibition, were not a lawful
consideration. In stating this reason the court said, among
other things, that " the insurance was invalid." Haverhill
Ins. Co. v. Prescott, 42 N. H. 547; Jones v. Smith, 3 Gray,
500; Williams v. Cheney, Ibid. 222. These decisions were

followed by amendments of the statutes, declaring that not-withstanding such non-compliance with the law by these companies their contracts of insurance should be valid against them, leaving them subject only to the penalties imposed; and thereupon, the objection of a want of legal consideration being thus removed, the courts, of course, held that they could enforce payment of the premium notes. Union Ins. Co. v. Smart, 60 N. H. 460; Provincial Ins. Co. v. Lapsley, 15 Gray, 262; Nat'l Mut. Fire Ins. Co. v. Pursell, 10 Allen, 231. In the New Hampshire case last cited the object of the amendment was said to be "to remedy the injustice to persons holding policies in foreign insurance companies thus declared invalid," which was doubtless as true of the Massachusetts amendment also.

The inference plausibly claimed is that the Legislatures and courts in these States understood the effect of the original act to be to make the policy invalid to the holder as well as to the company.

That the Legislatures intended to remove all question as to his right or to remedy a supposed injustice, is clear enough; and that, we think, is all the New Hampshire court should have said or really meant to say of their object.

That they did not understand such effect to have been intended by the original act they hastened to show by its amendment as soon their attention was called to it. They may be presumed to have understood that courts give effect to statutes according to their intention and that the rule making forbidden agreements void, where it properly applies, is just; and so, that if it applied in this case there was no real injustice to be remedied. Their fear must have arisen from the form of the statement by the courts—that "the insurance was invalid "—which, being unqualified in terms, might mislead the companies to refuse payment of losses or policy holders to abandon their claims. This was reason enough for the amendments. They could do no harm, and might do good.

But these courts have not in fact decided that the policies were invalid to the holder. As in the Rosenthal case, *supra*,

that question was not before them. What was to be decided was simply whether they were valid to the companies as a consideration for the notes they were suing on; and therefore the language used, though general, is to be understood with reference to that question only, and limited by it. In that view it was appropriate. For that or any like purpose the insurance was invalid; of no legal effect. But the decision went no further, and there was not even a *dictum* upon the question here presented.

In respect to the effect of prohibitory statutes upon agreements made in violation of them, the authorities make a clear distinction between those which are intended to regulate the conduct of the citizens generally, and those intended to restrain one class for the protection of another. In agreements against the former the parties are *in pari delicto*, and therefore the courts will aid neither to enforce them; while in those against the latter, though both parties may be *in delicto*, yet they may not be *in pari delicto*, and therefore the courts may aid the one where they would not aid the other. See Story's Eq. Jur., Secs. 298–302. We reproduce the language of Lord Mansfield in Smith v. Bromley, Doug. 695, as quoted in note to Sec. 298: "If the act is in itself immoral, or a violation of the general laws of public policy, there the party paying shall not have this action (to recover back the money); for, where both parties are equally criminal against such general laws, the rule is *potior est conditio defendentis*. But there are other laws which are calculated for the protection of the subject against oppression, extortion, deceit, etc. If such laws are violated, and the defendant takes advantage of the plaintiff's condition or situation, then the plaintiff shall recover. And it is astonishing that the reports do not distinguish between the violation of the one sort and the other."

In 3 Parsons on Contracts, 127, it is said: "The distinction has been taken between statutes enacted on general grounds of policy and public expediency, in which each party violating the law is *in pari delicto* and entitled to no assistance from a court of justice, and those laws enacted to protect weak or necessitous men from being overreached, defrauded

or oppressed, in which event the injured party may have relief extended to him." In 6 Wait's Actions and Defenses, p. 65, it is said of the rule here contended for, that "it is not applicable where the contract is prohibited for the mere protection of one of the parties against an undue advantage which the other is supposed to possess;" and on p. 68, that "in every instance courts will look to the language and subject-matter of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished by the enactment, and if, from all these, it is manifest that it was not intended to render the prohibited act void, the courts will so hold, and construe the 'statute accordingly."

In Ferguson v. Sutphen, 3 Gilm. 573, the Supreme Court say: "A statute may declare a contract to be void, and still but one of the parties be guilty of its violation. Enactments of this character are often made for the purpose of protecting one class. of men from the oppression and impositions of another class of men; and in such cases the really guilty party is never allowed any relief under the statute, or permitted to set up the statute as a defense to relief sought by the other party;" and, after referring to the usury law for illustration, add that, "This principle applies to every contract declared to be void by the statute, in the making of which but one of the parties is *in pari delicto*."

The statute here considered is not of general application. It imposes certain restraining conditions only upon the small class of persons to which appellant belongs, to protect the small class to which appellee belongs. Pearce v. The People, 106 Ill. 19.

The agreement in question is not declared to be unlawful in itself, nor is it made so by any act or omission of appellee. The defense rests, not upon any alleged defect in the contract, or fault of the plaintiff or merit of the defendant, but solely upon its own failure to perform certain conditions, outside of the contract, required of the company alone, and for her security. It would seem to be enough that she loses the security thus intended to be provided for her through its fault, and that to deny her all benefit of the contract, also,

would be to pervert the statute entirely, making it a snare to the innocent and a cover to the guilty.

Appellee is not *in pari delicto.* She violated no provision of the statute, nor was she a party consenting to its violation by appellant. She had no knowledge of the facts which imposed upon it the prohibition against its act. We think she was not bound to inquire about them. Appellant had been duly authorized to do such business. Appellee resided in Decatur, where its agent kept his office, and had openly and continuously, for eighteen months, been doing and soliciting it. When he proposed to insure her property she was not bound to call for the production of his certificate, but well presumed he had authority. As against her claim, the fact that he had not, is no defense.

*Judgment affirmed.*